671 S.E.2d 73

**E. Ervin DARGAN, Jr. and New River Corporation, Appellants,**

**v.**

**James B. TANKERSLEY; Donnie S. Tankersley; First Union National Bank, Charlotte, North Carolina, f/k/a Southern Bank and Trust Company, as Trustee of the Posey D. Tankersley Estate; Marilyn Tankersley; Brett Tankersley; Shay Tankersley; Bonnie Lynn Bridwell, individually and as co-Personal Representative of the Lowell H. Tankersley Estate and as co-Trustee of the Revocable Trust Agreement dated November 22, 1991; Tracy Karen Tankersley, individually and as co-Personal Representative of the Lowell H. Tankersley Estate and as co-Trustee of the Revocable Trust Agreement dated November 22, 1991, Respondents.**

No. 26574.

Supreme Court of South Carolina.

Heard Oct. 9, 2008.

Decided Dec. 22, 2008.

482

J. Chris Brown and Jonathan P. Whitehead, both of Babb & Brown, of Greenville, for Appellants.

Cecil H. Nelson, Jr., of Nelson Law Firm, of Greenville, and Stephen R.H. Lewis, of Covington Patrick Hagins Stern & Lewis, of Greenville, for Respondents.

Justice BEATTY:

In this quiet title action, E. Ervin Dargan, Jr. and New River Corporation (Appellants) appeal from an order finding James B. Tankersley and the remaining parties (collectively, Respondents) were the owners of a disputed parcel of property and awarding them damages. We reverse.

## I. FACTS

Appellants brought this quiet title action to establish their ownership of a tract of real property in Greenville County, South Carolina. Respondents claimed an interest in the property and asserted counterclaims for damages. The disputed parcel is mountainous property measuring approximately twenty-seven acres.

The case was referred to a master-in-equity, who found (1) Appellants failed to prove by the preponderance of the evidence that they were the owners of the property; (2) Respondents did prove by the preponderance of the evidence that they were the owners of the disputed property; and (3) Appellants have damaged the property owned by Respondents by cutting trees and preparing the foundation for a road. The master ordered Appellants to execute a quitclaim deed to the property in favor of Respondents and to pay Respondents $25,000 in damages. Appellants appeal from this order.

## II. LAW/ANALYSIS

On appeal, Appellants argue the master erred in finding they had not proven their ownership claim and that Respondents have established their entitlement to the property and to damages. We agree.

Although actions to quiet title are usually in equity, "when the defendant's answer raises an issue of paramount title to land, such as would, if established, defeat [the] plaintiff's action, the issue of title is legal." *Hilton Head Plantation Prop. Owners' Ass'n v. Donald,* 375 S.C. 220, 223, 651 S.E.2d 614, 616 (Ct.App.2007) (citing *Mountain Lake Colony v. McJunkin,* 308 S.C. 202, 204, 417 S.E.2d 578, 579 (1992)). In a case tried by a judge without a jury, the factual findings of the judge will not be reversed on appeal unless found to be without evidence that reasonably supports the judge's findings. *Id.*

Appellants and Respondents own multiple tracts of property around the disputed twenty-seven-acre parcel. For simplicity, the property owned by Appellants, which is south of the disputed parcel, shall be called the Dargan Property, and the area owned by Respondents, which is north of the disputed parcel, shall be called the Tankersley Property. At issue is whether the disputed parcel, which is in an overlap area between the two properties, is part of the Dargan Property or the Tankersley Property.

As noted by the master, it is undisputed that the Dargan Property, the Tankersley Property, and the overlap area were once owned by a common grantor, the Saluda Land and Lumber Company. Saluda executed two deeds that eventually led to the competing claims for the twenty-seven acres.

**Respondents' Title.** Respondents trace their title to a deed executed by Saluda to one of their predecessors-in-title, Earle Hart, in 1943 (the Hart Deed). The Hart Deed conveyed several large tracts of land described as the "Betty Orr Tract" or "Tract 1" (1,517 acres plus 82 acres) and the "L. I. Jennings Tract" or "Tract 2" (835 acres). The Hart Deed described the property by metes and bounds and referenced a plat prepared by surveyor Howard Wiswall, 1918–20 (the Wiswall Plat). The Hart Deed description does not include

the twenty-seven disputed acres. The twenty-seven disputed acres are specifically shown on the Wiswall Plat as an overlap area lying between the L.I. Jennings Tract, which is to the north, and the J. N., R.M. and Harvey Cleveland (Dolton "[T]ract)," [1] which is to the south. The Wiswall Plat includes a notation about what is variously referred to as the Dolton Tract or the Dalton Tract. The notation is "400 Ac."—meaning 400 acres, and under that is the phrase, "Laps not included."

In 1951, Hart conveyed approximately 704 acres of this property to William Goldsmith, Jr. Hart simultaneously recorded a plat entitled the "Hart Valley Ranch" Survey, which had been prepared in 1944, some sixteen months after the deed from Saluda to Hart, and it was prepared at Hart's request. The Hart Valley Ranch Survey includes the twenty-seven-acre overlap area in the property owned by Hart and transferred to Goldsmith. In 1952, Goldsmith conveyed the 704 acres to some of the Respondents (James Tankersley and the now-deceased Lowell and Posey Tankersley) by a deed that also referenced the Hart Valley Ranch Survey. The property owned by Respondents is what is now called the Tankersley Property.

**Appellants' Title.** Appellants trace their title to a deed from Saluda to E.E. Dargan (the father of appellant E. Ervin Dargan, Jr.) that was signed on June 28, 1951 and recorded on April 11, 1952 (the Dargan Deed). The Dargan Deed conveyed various interests in 85 parcels to E.E. Dargan, including an undivided one-half interest in "Parcel 10" that now forms part of the Dargan Property. Appellants' remaining one-half interest in the Dargan Property was conveyed by various deeds recorded between 1980 and 1995.

Appellants contend their title to the disputed property comes from either of two clauses in the Dargan Deed. They first assert the description of Parcel 10 conveys the property. In the alternative, they assert the language contained after all the property descriptions, which they refer to as a "catch-all provision," conveys the disputed property.

---

1. The Wiswall Plat itself appears to refer to the "Dolton [T]ract," but the plat is not clear and the parties (and other documents) have also referred to this as the "Dalton Tract."

**Parcel 10 Description.** Appellants first rely upon the description of Parcel 10 in the Dargan Deed, which provides for conveyance of the following property from Saluda to E.E. Dargan:

An undivided one-half interest in and to that certain tract of land in Cleveland Township, Greenville County, State of South Carolina, containing 400 acres, more or less, situate and lying to the South of the property designated on the plat mentioned above as "L. I. Jennings Tract", and fully described on said plat as "J. N., R. M., and Harvey Cleveland (Dalton Tract) 400 acres", reference to which plat is hereby craved for a complete and accurate description of the area, metes and bounds of said property.

There is expressly excluded from this tract the following:

(a) 16 acres, more or less, conveyed by the Grantor to Mark Jones, by deed dated May 26, 1934, recorded in the said [R.M.C.] Office in Deed Book 132, at page 196.

(b) Right-of-way granted by the Grantor to Duke Power Co., by deed dated May 27, 1937, recorded in the said R.M.C. Office in Deed Book 199, at page 121.

The tract above conveyed contains approximately 384 acres.

Appellants assert the master should have found the Parcel 10 legal description in the Dargan Deed conveyed the disputed area to them because it indicated the property being conveyed was the tract of land lying to the south of the L.I. Jennings Tract as shown on the Wiswall Plat, and the tract of land to the south is the Dalton Tract. Additionally, since Parcel 10 refers to the Wiswall Plat, the plat is part of the deed. Appellants assert that an ambiguity arises as to whether the overlap area shown on the Wiswall Plat is included in the Dalton Tract, which is the parcel of land lying to the south of the L.I. Jennings Tract referred to in the Parcel 10 description in the Dargan Deed. Appellants argue that due to the ambiguity, the master should have considered the surrounding circumstances and found the overlap property was conveyed in the Parcel 10 description of the Dargan Deed. They note the metes and bounds description of the property in the deed from Saluda to Hart, Respondents' predecessor-in-title, excluded the overlap area; thus, it fell within the parameters of what was conveyed to them in Parcel 10.

In rejecting Appellants' claim that the Parcel 10 legal description in the Dargan Deed conveyed the overlap area to Appellants, the master made the following findings: (1) the disputed property is shown on the Wiswall Plat as an overlap in the southern portion of what is now the Tankersley Property and on the northern portion of what is now the Dargan Property, (2) the Wiswall Plat specifically states on its face that "laps" are not included in what was called the Dalton Tract and is now the Dargan Property, (3) a calculation of acreage based on the calls, metes, and bounds shown on the Wiswall Plat confirms that the overlap area is not part of the Dargan Property, (4) the Hart Valley Ranch Survey includes the overlap property in the Tankersley Property, (5) the overlap area is not included in a metes and bounds description in the 1943 deed from Saluda to Hart in Respondents' chain of title, (6) the property is included by reference to the Hart Valley Ranch Survey in the 1951 deed from Hart to Respondents' predecessor-in-title, and (7) the property is not included in the Dargan Deed in the Parcel 10 description because the description craves reference to the Wiswall Plat, which the master noted he had already determined did not include the overlap area as part of the Dalton Tract that had become the Dargan Property.

We agree with the master's conclusion that the Parcel 10 description in the Dargan Deed did not convey the overlap property to Appellants. Although the Dargan Deed describes the property as being south of the L.I. Jennings Tract, it further identifies it as being the 400 acres shown on the Wiswall Plat as the Dalton Tract, and the Wiswall Plat expressly indicates the Dalton Tract is 400 acres with "[l]aps not included."

As noted by the master, Appellants' own witness, surveyor Ray Dunn, acknowledged during cross-examination that the overlap area is not included on the Wiswall Plat as being part of what is now the Dargan Property because it is designated on the Wiswall Plat as a "lap" and is specifically excluded from the acreage description.

An expert witness for Respondents, surveyor Dick Williams, testified that he found the Wiswall Plat to be very reliable, and he calculated the acreage of the Dargan Property from

the calls, metes, and bounds shown on the Wiswall Plat for the Dalton Property and determined that Wiswall's calculation of 400 acres does not include the disputed overlap property. He stated the Wiswall Plat itself notes that the Dalton Tract consists of 400 acres and indicates "Laps not included," which he said "means that any laps are not included in that 400 acres."

Based on the foregoing, the Parcel 10 description did not convey the overlap property to Appellants. It is not necessary to rely upon the additional grounds enumerated by the master to reach this conclusion.

**Catch–All Provision.** Appellants next assert the master erred in finding the catch-all provision in the Dargan Deed did not provide an alternative basis for finding they owned the twenty-seven acres in dispute. We agree.

█ The Dargan Deed enumerates and describes 85 separate parcels, after which there is the following provision wherein Saluda states it is conveying to E.E. Dargan all other real estate that Saluda owned in Greenville County and Pickens County:

> TOGETHER with any and all other real estate owned directly by the Grantor in Greenville and Pickens Counties, State of South Carolina, together with all easements, rights-of-way, reversions or other rights of any kind, as the Grantor may own directly in connection with any of the above described real estate, *it being the intent of the Grantor by this deed to convey to the Grantee herein named, all real estate or other rights in real estate owned directly by the Grantor.* [Emphasis added.]

The master found this catch-all provision was "so broad as to be ineffective because it offers no means of identifying the Property [the parcel in dispute], particularly in light of the fact that the Dargan Deed contains no fewer than 85 specific, identifiable, and fully-described parcels of property." The master observed that "a conveyance through a deed is not like a will, and deeds must necessarily identify the property being conveyed."

In their briefs, Appellants and Respondents state South Carolina courts have not directly ruled on the validity of catch-

all provisions, although they note we have made a passing reference to such provisions in one case, *Hamilton v. CCM, Inc.*, 274 S.C. 152, 155, 263 S.E.2d 378, 379–80 (1980) ("In 1975 Lighthouse Beach Company was dissolved and its properties were divided between Sea Pines and Travelers through the execution of two deeds. Each of these deeds conveyed numerous parcels of land, although neither deed made specific reference to Parcel B–2. It was thereafter discovered that Parcel B–2 had not been specifically conveyed to either Travelers or Sea Pines but that title to a tract of land which included Parcel B–2 had in fact passed by virtue of a residual or catch-all clause contained in the dissolution deed from Lighthouse Beach Company to Sea Pines. Upon this discovery, this tract of land was conveyed in 1976 by Sea Pines to Travelers. Travelers then conveyed the property, including Parcel B–2, to CCM.").

Respondents state the Court in *Hamilton* did not cite the language of the dissolution deed, but they concede that "it would appear that South Carolina courts will accept the use of a catch[-]all provision under certain circumstances." Respondents argue the description here was too vague, however, to operate as a valid conveyance.

South Carolina has expressly recognized the validity of a catch-all provision. In *Sally v. Gunter*, 47 S.C.L. (13 Rich.) 72 (1860), one of the issues on appeal concerned a challenge to a deed that was issued from an executor to an individual. The first part of the deed described twenty-seven tracts of land to be conveyed, then provided for the conveyance of all additional real estate owned in South Carolina as follows: "[T]ogether with all other lands and real estates whatsoever and wheresoever situated in the State of South Carolina." *Id.* at 74 note (a). The land in dispute was not included in the property that was specifically described. *Id.*

The appellant challenged the deed on the basis that it did not describe the land in dispute with legal and sufficient certainty and that the deed was, therefore, void for uncertainty. *Id.* at 73. The appellate court rejected this argument and found the description was sufficient, citing the maxim "id certum est, quod certum reddi potest"—i.e., "that is certain which can be made certain." *Id.* at 76; *see also Carolina*

*Helicopter Corp. v. Cutter Realty Co.,* 263 N.C. 139, 139 S.E.2d 362, 366 (1964) (defining this legal maxim).

The weight of authority holds that such catch-all provisions are sufficient to transfer title. *See* W.S.R., Annotation, *Sufficiency and Construction of Description in Deed or Mortgage as 'All' of Grantor's Property, or 'All' of his Property in Certain Locality,* 55 A.L.R. 162, 163 (1928) ("By the weight of authority, a deed or mortgage, describing the subject-matter as 'all' of the grantor's property, or 'all' of his property in a certain locality, is not defective or void for want of a sufficient description." (citing, among other cases, *Sally v. Gunter* )). This principle has long been recognized by various courts, including the Supreme Court of the United States. *See, e.g., Wilson v. Boyce,* 92 U.S. 320, 325, 23 L.Ed. 608 (1875) (holding a deed "of all my estate" or "of all my lands wherever situated" is sufficient to pass title).

■ Although there may be situations where a party may not be on notice of a catch-all provision, that does not appear to be the situation in the current appeal. Notice is sufficient if it puts anyone in the chain of title on notice. *See Fuller–Ahrens P'ship v. South Carolina Dep't of Highways & Pub. Transp.,* 311 S.C. 177, 181, 427 S.E.2d 920, 923 (Ct.App.1993) (citing *Carolina Land Co. v. Bland,* 265 S.C. 98, 217 S.E.2d 16 (1975)). The catch-all provision was in a deed recorded within the chain of title of what is now the Dargan Property, and the overlap area was clearly exempted from the metes and bounds description of what is now the Tankersley Property in Respondents' chain of title.

The master concluded Respondents had established title to the disputed parcel. In so doing, however, the master specifically acknowledged and found that the disputed parcel "is not included in a metes and bounds description in the 1943 deed from Saluda to Hart in [Respondents'] chain of title." Nevertheless, the master found the disputed parcel "is included by reference to the Hart Valley Ranch Survey in the 1951 deed from Hart to [Respondents'] predecessor in title. The clear inference is that Hart was conveying what he felt he owned, including the [disputed parcel]." The master further noted that the Hart Valley Ranch Survey includes the disputed parcel in the area that is now the Tankersley Property.

The master correctly observed that the metes and bounds description of the L.I. Jennings Tract (or Tract 2) in the Hart Deed does not include the overlap area, as the description expressly follows a path around the overlap. Based on this fact, the master erred in finding that, simply because Hart included the disputed parcel in a plat he prepared and then purported to transfer this property, that he (and his successors) somehow acquired legal title to the disputed parcel. The fact that Hart included property that "he felt he owned" does not transform the legal title. Although Respondents pled other grounds for acquiring ownership the master did not rule on them.[2] The basis for the master's ruling is that Respondents had legal title to the property from their chain of title. We hold this was error as the deeds in this case indicate the property was conveyed in Appellants' chain-of-title under the catch-all provision whereby Saluda expressly stated it was its intent was to distribute all of its remaining property.

### III. CONCLUSION

Based on the foregoing, we conclude Appellants have established their ownership of the twenty-seven-acre parcel via the catch-all provision in the deed in their chain of title. Therefore, we reverse the master's ruling that Respondents are the owners of the disputed parcel and that they are entitled to a quitclaim deed and damages.[3]

**REVERSED.**

WALLER and PLEICONES JJ., concur. KITTREDGE, J., concurring in a separate opinion in which TOAL, C.J., concurs.

Justice KITTREDGE:

I concur in result and the reasoning of the majority concerning Respondents' lack of ownership of the disputed tract,

---

2. Although not ruled upon by the master, Respondents pled adverse possession and the forty year statute, S.C.Code Ann. § 15–3–380 (2005). At oral argument, Respondents asserted the evidence showed they had been using the property for thirty-seven years. This is less than the statutory period, in any event.

3. Based on our disposition, we need not reach Appellants' remaining allegation of error regarding the exclusion of an expert witness.

a tract of approximately thirty acres referred to as the "laps" or the overlap area. I write separately because of the incongruity of a deed that excludes a tract of land juxtaposed to a catch-all provision.

I begin with the premise that the relevant inquiry is to ascertain the intent of the grantor, the Saluda Land and Lumber Company (Saluda). *Gardner v. Mozingo*, 293 S.C. 23, 25, 358 S.E.2d 390, 391 (1987) ("In construing a deed, the intention of the grantor must be ascertained and effectuated. . . ."). In the construction of deeds, we are usually confronted with a detailed description of the property sought to be conveyed. Yet jurisprudence is fairly uniform to the effect that catch-all provisions are not defective for want of a sufficient description. The majority opinion cites to W.S.R., Annotation, *Sufficiency and Construction of Description in Deed or Mortgage as "All" of Grantor's Property, or "All" of his Property in Certain Locality*, 55 A.L.R. 162, 163 (1928) ("A deed is generally held not to be ineffective because it describes the property conveyed as all the real estate belonging to the grantor."). *See also* 23 AM.JUR.2D *Deeds* § 49 (2002) ("A deed describing land as 'all' the grantor's property or 'all' his property in a certain locality is not defective or void for want of a sufficient description. . . .").

Catch-all provisions may even convey all of a grantor's property when the deed specifically describes property which does not include the property in question. *Sally v. Gunter*, 47 S.C.L. (13 Rich.) 72 (1860) (holding that disputed land not included in the twenty-seven tracts described in deed was conveyed under a catch-all provision); *see also Hightower v. Blakely Hard Wood Lumber Co.*, 163 Ga. 776, 137 S.E. 22, 23 (1927) (holding that a deed containing several described tracts, followed by a conveyance of "also any and all other lots owned by me anywhere not herein enumerated," was sufficiently definite to convey the disputed, non-described tract). The consistent theme in the cases giving efficacy to catch-all provisions is the recognition that the grantor intended to convey the disputed tract, notwithstanding the absence of a detailed description.

Appellants' ownership claim of the disputed tract—the "laps"—turns on the construction of the deed recorded on

April 11, 1952 (the Dargan Deed). The Dargan Deed conveyed eighty-five specifically described tracts, followed by a broad catch-all provision, including language that the property was conveyed "TOGETHER with any and all other real estate owned directly by the Grantor in Greenville and Pickens Counties ... [and it is] the intent of the Grantor by this deed to convey to the Grantee herein named, all real estate or other rights in real estate owned directly by the Grantor." As determined in the majority opinion, Appellants may not rely on "Parcel 10" referenced in the Dargan Deed. Parcel 10 incorporates the Wiswall Plat; the Wiswall Plat shows the disputed tract, but the metes and bounds description in the plat specifically *excludes* the disputed tract. We are thus presented with the unusual situation of an exclusion of a tract juxtaposed to a catch-all provision. Does a catch-all provision include a tract that is identified but excluded in the deed? I answer that question with—it depends. More to the point, it depends on the intent of the grantor.

In this case, it is manifest that Saluda intended the catch-all to convey all of its interest in the property, including the disputed tract. Saluda at one time owned thousands of acres in this area. Saluda ceased its lumber business and began selling its property in Greenville and Pickens Counties years prior to the Dargan Deed.[4] Saluda's final sale was the Dargan Deed, which went to great lengths to specifically describe eighty-five separate parcels. The Dargan Deed concluded with the broad catch-all provision noted above. Given the multiple deeds out from Saluda, the intended finality of the Dargan Deed, and the arguably difficult task associated with construing the Wiswall Plat, I find the grantor Saluda intended to convey the disputed tract to Appellants' predecessor-in-title through the catch-all provision in the Dargan Deed.

Under the circumstances presented, the unmistakable intention of Saluda was to convey whatever remaining interest in real property it had in 1952. It defies all reason to infer an

4. One example of a previous conveyance is the 1943 Hart Deed from Saluda to one of Respondents' predecessors-in-title. For the reasons discussed in the majority opinion, Respondents' claim to the "laps" fails because of the inclusion of the Wiswall Plat in the 1943 Hart Deed and the exclusion of the "laps" by the plat's mete and bounds description.

intent on the part of Saluda to convey all of its property except this inaccessible small tract. In concurring with the result of the majority, my analysis rests on ascertaining the intent of the grantor.

TOAL, C.J., concurs.